Dustin DOWHOWER, a minor, by his Guardian ad
Litem Susan Rosenberg, Tamara Dowhower and
Larry Dowhower, Plaintiffs-Respondents,

v.

Simon MARQUEZ and Viking Insurance Company
of Wisconsin, Defendants,

WEST BEND MUTUAL INSURANCE Co., Defendant-
Appellant,†

AETNA LIFE INSURANCE Co., Defendant.

Court of Appeals

*No. 01–1347. Submitted on briefs December 13, 2001.—Decided
January 15, 2003.*

2003 WI App 23

(Also reported in 659 N.W.2d 57.)

† Petition to review filed.

194

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jeffrey Leavell* of *Jeffrey Leavell, S.C.*, of Racine.

On behalf of the plaintiffs-respondents, the cause was submitted on the briefs of *Robert L. Jaskulski* and *Brian P. Mularski* of *Domnitz, Mawicke & Goisman, S.C.*, of Milwaukee.

Before Brown, Anderson and Snyder, JJ.

¶ 1. BROWN, J. West Bend Mutual Insurance Co. appeals from a judgment declaring the reducing clause contained in the policy it issued to the Dowhowers unenforceable and requiring it to pay the Dowhowers the full $50,000 limit of liability guaranteed in the policy. After a thorough review of the policy at issue, we determine that the policy as a whole is inconsistent and contradictory. We conclude that the policy failed to clearly inform the Dowhowers that they were purchasing a fixed level of underinsured motorist recovery that would be arrived at by combining payments made from all sources. Thus, the reducing clause's effect is not "crystal clear" within the context of the whole policy. Accordingly, the policy is ambiguous and the reducing clause is unenforceable. We therefore affirm.[1]

---

[1] A motion for stay was granted on January 8, 2002, pending a decision by the supreme court in *Badger Mut. Ins. Co. v. Schmitz*, 2002 WI 98, 255 Wis. 2d 61, 647 N.W.2d 223; a motion to file supplemental briefs was granted on August 5, 2002.

¶ 2. The facts in this case are undisputed.[2] While crossing the street in April 1997, Dustin Dowhower, a minor, was injured as a result of the negligence of a motorist. Viking Insurance Company of Wisconsin insured the vehicle that struck Dowhower. Viking's policy carried a limit of $25,000 per person. Viking paid its $25,000 policy limit to the Dowhowers. Pursuant to both WIS. STAT. § 632.32(5)(i) (1999–2000),[3] which authorizes insurance companies to include reducing clauses in their policies, and the reducing clause in the Dowhowers' policy, West Bend paid the Dowhowers $25,000, an amount representing the $50,000 UIM bodily injury limit under the Dowhowers' UIM policy minus the $25,000 paid by Viking.

¶ 3. The Dowhowers sought a judgment from the trial court declaring unenforceable the reducing clause provision in the UIM policy and contending that WIS. STAT. § 632.32(5)(i) violated the United States and Wisconsin Constitutions. West Bend filed a motion to dismiss the action and counterclaimed for a declaration that it had paid all that it owed pursuant to § 632.32(5)(i) and the policy language. The trial court granted the Dowhowers' motion for declaratory judgment on the grounds that § 632.32(5)(i) violated the substantive due process rights of the Dowhowers. The court further declared that West Bend was obligated to provide $50,000 in UIM benefits to the Dowhowers. West Bend appealed and we certified to our supreme

---

[2] The facts of the case are taken primarily from the supreme court decision, *Dowhower v. West Bend Mut. Ins. Co.*, 2000 WI 73, 236 Wis. 2d 113, 613 N.W.2d 557 (*Dowhower I*).

[3] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

court the issue of whether § 632.32(5)(i) violates substantive due process under the state and federal constitutions.

¶ 4. The supreme court accepted our certification and reversed the judgment of the trial court, holding that the statute did not deprive the Dowhowers of their constitutionally protected rights. *Dowhower v. West Bend Mut. Ins. Co.*, 2000 WI 73, ¶¶ 9, 36, 236 Wis. 2d 113, 613 N.W.2d 557 (*Dowhower I*). The supreme court directed the trial court to determine on remand whether the language contained in the policy was ambiguous and, if so, whether a reasonable person in the position of the insured would have understood the policy to mean that the $50,000 limit in UIM coverage was to be a maximum recovery from all sources. *Id.* On remand, the trial court concluded that the policy was ambiguous and a reasonable person in the position of the Dowhowers would not have understood the policy to mean that the $50,000 limit in UIM coverage was to be a maximum recovery from all sources. The court then declared the UIM reducing clause in the policy unenforceable and required West Bend to pay the full $50,000 on the policy. West Bend appeals.

¶ 5. The resolution of this case involves the interpretation of language in an automobile insurance policy. The construction or interpretation of language in an insurance policy presents a question of law that we review de novo. *Taylor v. Greatway Ins. Co.*, 2001 WI 93, ¶ 9, 245 Wis. 2d 134, 628 N.W.2d 916. If the language in an insurance policy is unambiguous, we must not rewrite the policy by construction. *Dowhower I*, 2000 WI 73 at ¶ 34. If the policy is ambiguous, we construe ambiguities in favor of coverage. *Id.* Words or phrases of an insurance policy are ambiguous if they are suscep-

tible to more than one reasonable construction. *Smith v. Atl. Mut. Ins. Co.*, 155 Wis. 2d 808, 811, 456 N.W.2d 597 (1990). If the language in an insurance policy is ambiguous, we interpret the language by attempting to determine "what a reasonable person in the position of the insured would have understood the words of the policy to mean." *Dowhower I*, 2000 WI 73 at ¶ 35 (citation omitted). In addition, the interpretation of ambiguous language in an insurance policy "should advance the insured's reasonable expectations of coverage." *Taylor*, 2001 WI 93 at ¶ 10.

¶ 6. WISCONSIN STAT. § 632.32(5)(i) grants insurers the right to reduce their limits of liability by the sums paid by or on behalf of the tortfeasor. The statute reads as follows:

(5) PERMISSIBLE PROVISIONS . . . .

(i) A policy may provide that the limits under the policy for uninsured or underinsured motorist coverage for bodily injury or death resulting from any one accident shall be reduced by any of the following that apply:

1. Amounts paid by or on behalf of any person or organization that may be legally responsible for the bodily injury or death for which the payment is made.

2. Amounts paid or payable under any worker's compensation law.

3. Amounts paid or payable under any disability benefits laws.

The parties do not dispute that the reducing clause West Bend issued to the Dowhowers conforms to the strictures of § 632.32(5)(i). Thus, a reducing clause itself is not ambiguous or contrary to public policy, *see Dowhower I*, 2000 WI 73 at ¶ 20, and the sole question

before us is whether the reducing clause is invalid despite its compliance with the statute.

■

¶ 7. West Bend argues that the reducing clause in the Dowhowers' policy is enforceable for several reasons. It asserts that the reducing clause is not obscured or hidden within the policy and the policy is therefore easy to read and user friendly. West Bend also contends that the policy informs the reasonable insured with crystal clarity that his or her recovery will be reduced by any payments made on behalf of the tortfeasor and sends no contradictory or false signals to the insured that would indicate otherwise. Finally, West Bend also seems to argue that even if the policy does contain inconsistencies, its reducing clause clarifies them and renders the policy enforceable.

¶ 8. In *Dowhower I,* the supreme court determined that UIM reducing clauses are valid when "the policy clearly sets forth that the insured is purchasing a fixed level of UIM recovery that will be arrived at by combining payments made from all sources." *Id.* at ¶ 33. The court further recognized that "a reducing clause may be ambiguous within the context of the insurance contract." *Id.* at ¶ 35.

■

¶ 9. In *Badger Mut. Ins. Co. v. Schmitz,* 2002 WI 98, 255 Wis. 2d 61, 647 N.W.2d 223, the court explained that *Dowhower I* contemplated the consideration of the entire insurance policy and not simply the language contained in the reducing clause. *See Schmitz,* 2002 WI 98 at ¶ 42. The court determined that a UIM reducing clause is not valid merely because its terms are unambiguous and it complies with Wis. Stat. § 632.32(5)(i). *See Schmitz,* 2002 WI 98 at ¶¶ 48–49. Rather, the effects of the reducing clause must be "crystal clear in

the context of the whole policy." *Id.* at ¶ 46. The policy in its entirety must clearly lead the reasonable insured to the conclusion that he or she is purchasing a predetermined amount of insurance that would be arrived at by combining payments from all permissible sources. *See id.* at ¶ 38; *Dowhower I*, 2000 WI 73 at ¶ 38 (Bradley, J., concurring.) In reaching this conclusion, the *Schmitz* court embraced portions of Justice Ann Walsh Bradley's concurrence in *Dowhower I*, which read, in part, "[a]lthough [the legislature] authorized reducing clauses under WIS. STAT. § 632.32(5)(i)1, the legislature envisioned clear policies without a hint of illusion to protect consumers from fraudulent practices. It did not authorize deception in the implementation of the statute." *Schmitz*, 2002 WI 98 at ¶ 39; *see also Dowhower I*, 2000 WI 73 at ¶ 50 (Bradley, J., concurring). Accordingly, if the coverage provided is misleading and unclear, the policy is ambiguous, or worse, and the reducing clause is not enforceable. *Schmitz*, 2002 WI 98 at ¶ 49.

¶ 10. In *Schmitz*, the court invalidated a reducing clause in an insurance policy that while complying with WIS. STAT. § 632.32(5)(i) was ambiguous when viewed in the context of the policy as a whole. *Schmitz*, 2002 WI 98 at ¶ 61. The court examined the whole policy, tracing the route the insured would have to take from the declarations page through the UIM portion and to the endorsement containing the reducing clause. *Id.* at ¶¶ 62–66. After working its way through the policy, the court concluded the policy was organizationally complex and plainly contradictory and hence failed to clearly set forth that the insured was purchasing a fixed level of UIM recovery arrived at by combining payments from all sources. *Id.* at ¶¶ 72, 75. Here we encounter similar problems when we attempt to trace

the path the Dowhowers would have to take to understand the extent of West Bend's coverage.

¶ 11. We begin our discussion of the issue at hand with a brief explanation of the thirty-four page policy West Bend issued to the Dowhowers. West Bend's policy consists of a Declarations page, an Endorsement Schedule, a Table of Contents, four coverage parts, and a set of Wisconsin-specific provisions. The Declarations page lists the types of coverage the policy provides, including Underinsured Motorist Bodily Injury. For each type of coverage, the liability limits and premiums are provided. The Declarations page also includes a list of the applicable form numbers, but does not provide a corresponding label indicating what is on those forms. The second page is labeled "Endorsement Schedule" and lists each of the applicable form numbers and provides a corresponding label for the forms. Among the fourteen forms listed are numbers PP0402 "SPLIT UNDERINSURED MOTORISTS LIMITS" and PP0428Z "UNDERINSURED MOTORSTS COVERAGE-WISCONSIN."

¶ 12. Pages three and four of the policy contain the Table of Contents. It is entitled "PERSONAL AUTO POLICY." Underneath this heading is the paragraph:

> This insurance policy is a **legal contract** between the insured and the company. The index below provides a brief outline of some of the important features of **your** policy. This is not the insurance contract and only the actual policy provisions will apply. The policy itself sets forth in detail the rights and obligations of both **you** and **your** insurance company. IT IS THEREFORE IMPORTANT THAT YOU READ YOUR POLICY CAREFULLY.

The Table of Contents then lists the various types of coverage addressed in the policy, including: Liability

201

Coverage, Medical Payments Coverage, Uninsured Motorists Coverage, and Coverage for Damage to Your Auto. Underinsured Motorists Coverage is not mentioned.

¶ 13. The fifth page of the policy includes the definitions. It does not define "declarations," "endorsement," "reducing clause" or "underinsured motorist."

¶ 14. Form number PP0402 is the thirty-first page of the policy. The form is entitled "SPLIT UNDERINSURED MOTORISTS LIMITS." The first line of the form states, "Underinsured Motorists Coverage" and then instructs the insured to see the Declarations page, apparently for more information on the policy's liability limits for each person. The remaining text on the page reads in its entirety:

> The first paragraph of the Limit of Liability provision in the Underinsured Motorists Coverage Endorsement is replaced by the following:
>
> **LIMIT OF LIABILITY**
>
> The limit of liability shown in the Schedule or in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident. This is the most we will pay regardless of the number of:
>
> 1. "Insureds;"
>
> 2. Claims made;
>
> 3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

The endorsement must be attached to the Change Endorsement when issued after the policy is written.

¶ 15. The thirty-second page of the policy is form PP0428Z, which is entitled "UNDERINSURED MOTORISTS COVERAGE-WISCONSIN." It states, "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." It then reads: "With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement." The endorsement then refers the policyholder to the Declarations for the limit of liability. The second page of the form describes West Bend's limit of liability for UIM coverage. The above quoted material from the form number PP0402 replaces the first paragraph under the section entitled "LIMIT OF LIABILITY." The second paragraph under Limit of Liability, Part B, represents the reducing clause and reads:

B. The limit of liability shall be reduced by all sums:

1. Paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A; and

2. Paid or payable because of the "bodily injury" under any of the following or similar law:

 a. Workers' compensation law; or

 b. Disability benefits law.

¶ 16. We begin our analysis with the Declarations page, the first page of the policy.[4] We note that on the

---

[4] While the supreme court remanded to the trial court the issue of whether, within the context of the West Bend policy, the

Declarations page of the policy, which is generally the portion of the insurance policy to which the insured looks first, West Bend lists the UIM coverage as "$50,000 each person $100,000 each accident" and does not provide any further explanation of the extent of its UIM coverage. A reasonable insured often looks only to the Declarations page to verify that he or she has been provided the coverage for which he or she contracted. *Dowhower I*, 2000 WI 73 at ¶ 41 (Bradley, J., concurring); *see also Schmitz*, 2002 WI 98 at ¶ 62. The Declarations page here, like the Declarations page examined in *Schmitz*, fails to explain or even refer to the possibility that the policy's UIM liability will be subject to further limitations. *See Schmitz*, 2002 WI 98 at ¶ 62. After examining the Declarations page in the West Bend policy, a reasonable policyholder would come to the conclusion that West Bend would provide UIM coverage in the amount of $50,000. The only arguable sign directing the policyholder to the reducing clause is the list of forms on the bottom of the page. However, the list of forms does not say which form corresponds to which endorsement and thus the list is of no help to the insured. As Justice Bradley stated in her concurring opinion in *Dowhower I*, "[t]he Declaration page creates an illusion of coverage because it misrepresents West Bend's liability as $50,000, when in reality the insurer will rarely, if ever, disburse the full amount by virtue of the reducing clause found elsewhere in its policy."[5] *Dowhower I*, 2000 WI 73 at ¶ 42 (Bradley, J., concurring).

---

reducing clause is ambiguous, in her concurrence, Justice Ann Walsh Bradley addressed the issue. *See Dowhower I*, 2000 WI 73 at ¶ 37 (Bradley, J., concurring). We agree with her analysis of the West Bend policy and apply much of it here.

[5] In its brief, West Bend creates a hypothetical scenario in which they claim the full $50,000 could be paid. West Bend

¶ 17. Second, the next page of the policy is the Endorsement Schedule. West Bend asserts that because the schedule lists the form numbers for the "Split Underinsured Motorists Limits" and the "Underinsured Motorists Coverage-Wisconsin," the policy is user friendly because the insured can easily turn to both forms to understand the UIM coverage and the reducing clause. While the Endorsement Schedule could potentially direct the insured to the form containing a description of the policy's UIM coverage, where he or she would happen upon the reducing clause, the Endorsement Schedule does not define what a form or an endorsement is nor does it inform the insured of where he or she might find the forms containing the endorsements. Also, absent from the schedule is any indication that the limit of liability will be reduced by payments received from other sources. Thus, the schedule does not alter the insured's expectation that he or she would receive the full $50,000 amount set forth in the Declarations page. Furthermore, as we will explain, the description of West Bend's liability limits contained in the forms is confusing and inconsistent with the rest of the policy.

¶ 18. Third, should a policyholder turn to the Table of Contents in search of a more detailed explanation of his or her UIM coverage, he or she would not even find UIM coverage listed among the types of

---

argues that if Dustin Dowhower were injured together with two other injury claimants who had no UIM coverage and the tortfeasor had a $25,000/$50,000 liability policy available, the two injury claimants without UIM coverage could collect the $25,000/$50,000 policy of the tortfeasor, leaving Dowhower to recover the maximum $50,000 policy limit from West Bend. However, the Dowhowers claim that such a result is contrary to Wisconsin law. Thus, even this scenario is subject to dispute.

coverage discussed in the policy. The Table of Contents lists various types of coverage contained in West Bend's policy—Liability Coverage, Medical Payments Coverage, Uninsured Motorists Coverage, Coverage for Damage to Your Auto—and directs the policyholder to pages setting forth the "Limit of Liability" on each type of coverage. Although the Table of Contents instructs the policyholder to read the entire policy, it still does not reference UIM coverage at all nor does it contain any further explanation of the limits on liability. Thus, the Table of Contents would not dispel the insured's expectation of coverage in the amount of $50,000 that had been guaranteed in the Declarations page. *See id.*, 2000 WI 73 at ¶ 44 (Bradley, J., concurring).

¶ 19. Finally, as Justice Bradley explained in her concurrence, in order for a reasonable insured to locate a discussion of a reduction in UIM coverage, he or she would be required to look beyond the Declarations page, which gives an insured an expectation of a full $50,000, and beyond the Endorsement Schedule and Table of Contents, which give a reasonable insured an expectation of no limitation of underinsured motorists coverage, and beyond approximately thirty additional pages of insurance policy jargon. *See id.* at ¶ 45 (Bradley, J., concurring). Once the insured finally is able to locate and examine the form numbers PP0402 and PP0428Z, he or she would still have difficulty comprehending the extent of his or her UIM coverage.

¶ 20. The first line of the endorsement entitled "Underinsured Motorists Coverage-Wisconsin" informs the insured that the endorsement changes the policy and that the insured should read the endorsement carefully. However, the endorsement then apparently refers the insured to the Declarations page for the policy's liability limits on UIM coverage, thereby up-

holding the reasonable insured's expectation that West Bend will pay the entire amount of the $50,000 guaranteed by the Declarations.

¶ 21. Form PP0402 entitled "Split Underinsured Motorists Limits," which is located on the thirty-first page of the policy and precedes the UIM endorsement, directs the insured to replace the first provision under the heading "Limit of Liability" on the subsequent UIM endorsement. The provision reads in part: "The limit of liability shown in the . . . Declarations for each person for Underinsured Motorists Coverage is *our maximum* limit of liability for all damages . . . . This is the *most we* will pay . . . ." (Emphasis added.) West Bend focuses on the term "our maximum" and argues that it "unambiguously suggest[s] that a lower limit (less than the *maximum* limit) may be applicable." While this may be true, the term also unambiguously suggests to a reasonable insured that if his or her claim were proven to be $50,000 or more, he or she would be entitled to a full $50,000—the maximum amount set forth on the Declarations page. In fact, the provision sends a false signal to the insured; it suggests that the maximum limit is indeed attainable. It reinforces the illusion of coverage Justice Bradley spoke of in *Dowhower I*, as West Bend will rarely, if ever, pay the full amount. *See id.* at ¶ 42 (Bradley, J., concurring).

¶ 22. The next page—the endorsement or form PP0428Z—contains West Bend's reducing clause. As we have already noted, the reducing clause comports with the requirements of Wis. Stat. § 632.32(5)(i) and itself creates no ambiguity. West Bend, however, seems to argue that the reducing clause clarifies any ambiguity that might otherwise exist within the policy concerning the extent of UIM coverage. While the reducing clause,

standing alone, is unambiguous, the law prevents us from reading the clause in a vacuum as West Bend asks us to do. *Schmitz* dictates that we review what appears to be an unambiguous reducing clause within the context of the entire insurance policy to determine whether the coverage provided is understandable and clear. *See Schmitz*, 2002 WI 98 at ¶ 49. *Schmitz* teaches us that in order for the policy to explain the effects of the reducing clause with crystal clarity, all of the provisions helping the insured navigate his or her way through the policy must be consistent with one another and with the reducing clause.

¶ 23. Here, the policy's sections send contradictory messages that would befuddle a reasonable insured in the position of the Dowhowers. While an insured might carefully work his or her way through the policy as instructed in the Table of Contents, after doing so, he or she still would not understand the extent of his or her UIM coverage. Viewed in conjunction, the Declarations page, the Endorsement Schedule, the Table of Contents and the UIM provisions create confusion and would lead the reasonable insured to expect full coverage from West Bend in the amount of $50,000. *See Dowhower I*, 2000 WI 73 at ¶ 47. The reducing clause, when viewed in the context of the whole policy, fails to clearly set forth that the insured is purchasing a fixed level of UIM recovery arrived at by combining payments from all sources. *See Schmitz*, 2002 WI 98 at ¶ 75. Thus, the reducing clause's effect is not crystal clear within the context of the whole policy. *See id*. at ¶¶ 46, 75. Accordingly, the UIM provisions are ambiguous and must be construed against West Bend and in favor of coverage. We therefore affirm the decision of the trial court declaring the reducing clause unenforce-

able and requiring West Bend to pay the Dowhowers the full $50,000 guaranteed in the policy.

*By the Court.*—Judgment affirmed.