Steven VAN ERDEN and Cherie Van Erden,
Plaintiffs-Appellants,†

v.

Joseph A. SOBCZAK, Defendant,

AMERICAN FAMILY MUTUAL INSURANCE COMPANY and
City of Milwaukee, Defendants-Respondents,

BADGER MUTUAL INSURANCE, Intervenor.

Court of Appeals

*No. 02–1595. Submitted on briefs January 7, 2003.—Decided
February 25, 2003.*

2003 WI App 57

(Also reported in 659 N.W.2d 896.)

† Petition to review filed.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Jonathan Cermele* and *Laurie Eggert* of *Eggert & Cermele, S.C.*, of Milwaukee.

On behalf of the defendant-respondent American Family Mutual Insurance Company, the cause was submitted on the brief of *Beth A. Boyer-Ryan* of *American Family Insurance Group* of Milwaukee.

On behalf of the defendant-respondent City of Milwaukee, the cause was submitted on the brief of *Nick G. Kotsonis* of *Crivello, Carlson & Mentkowski, S.C.*, of Milwaukee.

A nonparty amicus curiae brief was filed by *John F. Fuchs* of *Fuchs, DeStefanis & Boyle, S.C.*, of Milwaukee, on behalf of the Milwaukee Police Association and Milwaukee Police Supervisors Organization.

Before Fine, Schudson and Curley, JJ.

¶ 1. CURLEY, J. Steven and Cherie Van Erden appeal from the trial court's order granting summary judgment and dismissing their declaratory judgment

action against the City of Milwaukee, in which the Van Erdens sought a declaration that the City had a duty to offer underinsured motorist (UIM) coverage to Steven Van Erden, as a City employee, in accordance with WIS. STAT. § 632.32(4m)(a)1 (1999–2000).[1] The Van Erdens also appeal from the trial court's order granting summary judgment dismissing their declaratory judgment action against American Family Mutual Insurance Company, their automobile insurance carrier, in which they sought full UIM coverage under two policies, despite reducing and anti-stacking clauses in their insurance policies.

¶ 2. With respect to the City, the Van Erdens contend that, as a result of its obligation to provide uninsured motorist (UM) coverage pursuant to WIS. STAT. § 62.67, the City should be classified as "[a]n insurer writing policies" under WIS. STAT. § 632.32(4m)(a)1, and therefore, should be required to offer underinsured motorist coverage to its employees. With respect to American Family, the Van Erdens contend that the reducing clauses contained in both policies issued separately to Steven and Cherie Van Erden were ambiguous. The Van Erdens also claim that the UIM policy issued to Steven was illusory because, as a result of an anti-stacking provision, they would never receive any UIM benefits under Steven's policy. We disagree with each contention.

¶ 3. Because the City is self-insured, it is not "[a]n insurer writing policies" in accordance with WIS. STAT. § 632.32(4m)(a)1. Moreover, WIS. STAT. § 62.67, which applies specifically to cities that are self-insured, such as the City of Milwaukee, only applies to UM coverage.

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

We assume that if the legislature had intended to require that the City offer UIM coverage to its employees, it would have either expressly stated so in § 62.67, amended § 62.67 to include UIM coverage when it amended § 632.32 to include subsection (4m), or passed a new statute requiring UIM coverage for City employees. We cannot usurp the legislature's function.

¶ 4. Additionally, because the reducing clauses comply with WIS. STAT. § 632.32(5)(i) and clearly set forth the limits under both policies, we conclude that they are not ambiguous. Finally, because the anti-stacking clause complies with WIS. STAT. § 632.32(5)(f) and clearly sets forth the limits for similar coverage suffered by a person in any one accident, we conclude that the coverage is not illusory. Accordingly, the trial court is affirmed.

## I. BACKGROUND.

¶ 5. On November 22, 1998, while operating a Milwaukee Police Department squad car, Steven Van Erden, a Milwaukee Police Department officer, was struck broadside by a vehicle driven by Joseph Sobczak. Officer Van Erden suffered serious injuries. Through Badger Mutual Insurance Company, Sobczak carried an automobile liability insurance policy with liability limits of $25,000. Badger paid the full limits of the policy to Officer Van Erden and his wife, Cherie. The Van Erdens were also paid $159,496.33 in worker's compensation coverage by the City.

¶ 6. The Van Erdens then filed a claim for UIM coverage with their own insurance carrier, American Family. American Family had issued separate policies of insurance to Steven and Cherie. Both policies contained identical reducing and anti-stacking provisions. Based

886

on the terms of the policies, American Family paid the Van Erdens $65,503.67 – the difference between the largest amount of UIM coverage under either policy ($250,000) and the aggregate payments made by Badger on behalf of Sobczak and the City as Officer Van Erden's worker's compensation carrier ($184,496.33).

¶ 7. On November 16, 2001, the Van Erdens filed a declaratory judgment action against the City and American Family. All parties moved for summary judgment. The trial court granted summary judgment in favor of the City and American Family.

## II. ANALYSIS.

¶ 8. This appeal involves issues decided pursuant to summary judgment. We apply the same summary judgment methodology as the trial court. *Preloznik v. City of Madison*, 113 Wis. 2d 112, 115–16, 334 N.W.2d 580 (Ct. App. 1983). Thus, our review of the circuit court's decision to grant summary judgment is *de novo*. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–16, 401 N.W.2d 816 (1987).

¶ 9. Summary judgment must be granted if the evidence demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. RULE 802.08(2). We must first determine whether the complaint states a claim. *Green Spring Farms*, 136 Wis. 2d at 315. If the plaintiff has stated a claim and the pleadings show the existence of factual issues, then we must examine whether the moving party has presented a defense that would defeat the claim. *Preloznik*, 113 Wis. 2d at 116. If the defendant has made a prima facie

case for summary judgment, the court examines the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to determine whether a genuine issue exists as to any material fact, or whether reasonable conflicting inferences may be drawn from undisputed facts, therefore requiring a trial. *Green Spring Farms*, 136 Wis. 2d at 315.

¶ 10. We first confine our analysis within the summary judgment analysis to one issue: whether the City, which is a self-insured entity, is "[a]n insurer writing policies" under WIS. STAT. § 632.32(4m)(a)1, and, therefore, required to offer UIM coverage to its employees. Resolution of this issue involves the interpretation of both § 632.32(4m)(a)1 and WIS. STAT. § 62.67.

¶ 11. "The interpretation and application of a statute present questions of law which we review de novo." *State v. Volk*, 2002 WI App 274, ¶ 34, 258 Wis. 2d 584, 654 N.W.2d 24. Thus, our interpretation of a statute begins with the language of the statute, and if the language is plain and unambiguous, we will apply it without further inquiry into extrinsic interpretive aids, *see State v. T.J. Int'l, Inc.*, 2001 WI 76, ¶ 20, 244 Wis. 2d 481, 628 N.W.2d 774, because if the language employed is clear and unambiguous, it is conclusive of legislative intent, *see Cemetery Servs., Inc. v. Dep't of Regulation & Licensing*, 221 Wis. 2d 817, 825, 586 N.W.2d 191 (Ct. App. 1998). However, "[i]f statutory language is ambiguous, that is, 'if reasonable minds could differ as to its meaning,' we look to the scope, history, context, subject matter, and purpose of the statute to help establish its proper interpretation." *T.J.*, 2001 WI 76 at ¶ 20 (citations omitted).

¶ 12. WISCONSIN STAT. § 632.32(4m)(a)1 provides:

*An insurer writing policies* that insure with respect to a motor vehicle registered or principally garaged in this state against loss resulting from liability imposed by law for bodily injury or death suffered by a person arising out of the ownership, maintenance or use of a motor vehicle *shall provide* to one insured under each such insurance policy that goes into effect after October 1, 1995, that is written by the insurer and that does not include underinsured motorist coverage written *notice of the availability of underinsured motorist coverage,* including a brief description of the coverage. An insurer is required to provide the notice required under this subdivision only one time and in conjunction with the delivery of the policy.

(Emphasis added.) WISCONSIN STAT. § 62.67 states:

A 1st class city shall provide *uninsured* motorist motor vehicle liability insurance coverage for motor vehicles owned by the city and operated by city employees in the course of employment. The coverage required by this section shall have at least the limits prescribed for uninsured motorist coverage under s. 632.32 (4) (a).

(Emphasis added.)

¶ 13. Despite the fact that WIS. STAT. § 62.67 deals exclusively with UM coverage, the Van Erdens argue that, as a result of its obligation to provide UM liability coverage under § 62.67, the City should be considered "[a]n insurer writing policies" under WIS. STAT. § 632.32(4m)(a)1, and, therefore, has an obligation to offer UIM to its employees pursuant to § 632.32(4m)(a)1. However, the argument as to whether a self-insured entity is "[a]n insurer writing policies" under § 632.32 has already been settled by this court in *Classified Insurance Co. v. Budget Rent-A-Car of Wisconsin, Inc.*, 186 Wis. 2d 478, 521 N.W.2d 177 (Ct. App. 1994). In *Classified,* an employee of Budget Rent-A-Car

was driving a Budget car when she was involved in a collision with an uninsured motorist. *See id.* at 480. Budget was self-insured under WIS. STAT. § 344.16. *See id.* The employee's insurer sued Budget for indemnification/contribution, but the trial court granted summary judgment to Budget, concluding that Budget, as a self-insured entity, was not required to provide uninsured motorist coverage for occupants of its cars:

> We conclude that § 632.32(4)(a), Stats., is inapplicable to Budget as a self-insured entity under § 344.16, Stats. We reach this conclusion based on our determination that § 632.32(4)(a) applies only to policies of insurance issued or delivered in Wisconsin. Budget is not an insurance company and has not issued a policy of insurance. *See* § 600.03(25), Stats. (defining insurance), § 600.03(27), Stats. (defining insurer), and § 600.03(35), Stats. (defining insurance policy). By merely obtaining a certificate of self-insurance pursuant to ch. 344, Budget did not transform itself into an insurance entity capable of issuing an insurance policy on behalf of the operators of its vehicles.

*Id.* at 483–84.

¶ 14. We also note that language in our recent decision of *Prophet v. Enterprise Rent-A-Car Co.*, 2000 WI App 171, 238 Wis. 2d 150, 617 N.W.2d 225, applied the same logic to a similar situation involving UIM coverage. We concluded: "*Classified* still is persuasive authority for the proposition that, *absent a specific statutory duty, self-insurers are not required to provide*

*[uninsured motorist]* or *[underinsured motorist]* coverage." *Id.* at ¶ 17 (emphasis and brackets in original) (citation omitted).[2]

¶ 15. Thus, Wis. Stat. § 632.32(4)(a) and (4m)(a) are "inapplicable to . . . a self-insured entity." *See Classified*, 186 Wis. 2d at 483. Accordingly, we conclude that although Wis. Stat. § 62.67 requires the City to provide UM coverage to its employees, § 62.67 does not transmute the City into "[a]n insurer writing policies" under § 632.32(4m)(a)1. Rather, because the City is a self-insured entity, § 632.32(4m)(a)1 is inapplicable.

¶ 16. Moreover, if the legislature had intended to open the door wider and require the City to offer UIM coverage, it undoubtedly would have so provided by either amending Wis. Stat. § 62.67 or adopting a similar statute dealing with UIM coverage. In the absence of such action on behalf of the legislature, it is clear that neither Wis. Stat. §§ 632.32(4m)(a)1 nor 62.67 require the City to offer UIM coverage to its employees.

¶ 17. Next, we must determine whether the reducing clause contained in each of the separate policies issued to Cherie and Steven Van Erden is ambiguous. The Van Erdens claim the clause is ambiguous because it does not clearly indicate that Steven's total UIM coverage ($250,000) would be reduced by his worker's compensation benefits ($159,496.33) and the amount paid by Sobczak's liability insurance carrier ($25,000). The clause at issue was contained in the two policies issued to the Van Erdens and states:

---

[2] The position of the concurring opinion is ironic in light of the fact that *Prophet v. Enterprise Rent-A-Car Co.*, 2000 WI App 171, 238 Wis. 2d 150, 617 N.W.2d 225, was authored by Judge Schudson with the above-quoted language.

The limits of this coverage will be reduced by:

1. A payment made or amount payable by or on behalf of any person or organization which may be legally liable, or under any collectible auto liability insurance, for loss caused by an accident with an **underinsured motor vehicle**.

2. A payment under the Liability coverage of this policy.

3. A payment made or any amount payable because of **bodily injury** under any worker's compensation or disability benefits law or any similar law.

(Emphasis in original.)

¶ 18. "The construction or interpretation of an insurance policy presents a question of law to which we apply de novo review." *Badger Mut. Ins. Co. v. Schmitz*, 2002 WI 98, ¶ 50, 255 Wis. 2d 61, 647 N.W.2d 223.

> We first must determine whether the insurance contract is ambiguous. Words or phrases of an insurance contract are ambiguous if they are susceptible to more than one reasonable construction. Unambiguous language in an insurance contract must not be rewritten by construction. However if the policy is ambiguous, we construe such ambiguities against the insurer. To construe ambiguous language in an insurance policy, we attempt to determine what a reasonable person in the position of the insured would have understood the words of the policy to mean. We are conscious that our interpretation of ambiguous language in an insurance policy should advance the insured's reasonable expectations of coverage.

*Id.* at ¶ 51 (citations omitted).

¶ 19. We conclude that the reducing clause contained in both of the Van Erdens' policies complies with the explicit requirements for such clauses contained in WIS. STAT. § 632.32(5)(i), which states:

> A policy may provide that the limits under the policy for uninsured or underinsured motorist coverage for bodily injury or death resulting from any one accident shall be reduced by any of the following that apply:

> 1. Amounts paid by or on behalf of any person or organization that may be legally responsible for the bodily injury or death for which the payment is made.

> 2. Amounts paid or payable under any worker's compensation law.

> 3. Amounts paid or payable under any disability benefits laws.

In fact, the reducing clause in question directly mirrors the language of § 632.32(5)(i).

¶ 20. Furthermore, the reducing clause used by American Family complies with the public policy of the legislature expressed in adopting WIS. STAT. § 632.32(5)(i). *See State v. Martin,* 162 Wis. 2d 883, 897 n.5, 470 N.W.2d 900 (1991) ("While legislative history cannot be used to demonstrate that a statute unambiguous on its face is ambiguous, there is no converse rule that statutory history cannot be used to reinforce and demonstrate that a statute plain on its face, when viewed historically, is indeed unambiguous."). Legislative Memorandum 96–25 to 1995 Act 21, which amended § 632.32 to add subsections (4m) and (5)(f) through (5)(j), states that § 632.32(5)(i):

permits motor vehicle insurance policies to reduce the limit that is payable for uninsured or underinsured motorist coverage for bodily injury or death by payments received from other sources, such as the amounts paid by a person who is legally responsible for the bodily injury or death . . . [or] the amounts paid or payable under the worker's compensation law.

¶ 21. The Van Erdens' policies clearly set forth that their UIM coverage would be fixed at a level of recovery that would be arrived at by combining payments made from the listed sources. Thus, under *Badger Mutual* and the declared public policy of the legislature, because we have concluded that the reducing clause is unambiguous in the context of the whole policy, our inquiry is at an end.[3] *See Badger Mutual*, 2002 WI 98 at ¶¶ 41–46.

---

[3] After a legislative change authorized reducing clauses, case law regarding the validity of reducing clauses has gradually been developed. In *Sukala v. Heritage Mutual Insurance Co.*, 2000 WI App 266, ¶¶ 16–19, 240 Wis. 2d 65, 622 N.W.2d 457, we held that a reducing clause that complied with Wis. Stat. § 632.32(5)(i) was valid and unambiguous. The supreme court, in *Dowhower v. West Bend Mutual Insurance Co.*, 2000 WI 73, 236 Wis. 2d 113, 613 N.W.2d 557 (*Dowhower I*), decided that it was not enough for a reducing clause to comply with Wis. Stat. § 632.32(5)(i). The *Dowhower I* court held that reducing clauses in an UIM policy are valid so long as "the policy clearly sets forth that the insured is purchasing a fixed level of UIM recovery that will be arrived at by combining payments made from all sources." *Id.* at ¶ 33.

Next, our supreme court applied the *Dowhower* test in *Taylor v. Greatway Insurance Co.*, 2001 WI 93, 245 Wis. 2d 134, 628 N.W.2d 916. In doing so, our supreme court interpreted what appear to be reducing clauses identical to the reducing clauses at issue in the instant case. Further, the American Family insurance policies in question in *Taylor* appear to be indistinguishable from the instant policies (all appear to be

¶ 22. Finally, the Van Erdens claim that their UIM coverage is illusory. They allege that they would never use the UIM coverage under Steven's policy because while both policies were in effect, under the anti-stacking provision contained in each policy, they

standard American Family automobile insurance policies). After carefully examining the total policies, including the declarations pages, the coverage limits, the UIM coverage limits, the instructions, and the UIM endorsements in *Taylor*, our supreme court stated: "We conclude that the language in each of American Family's policies at issue satisfies the requirements of *Dowhower [I]*. Each policy clearly sets forth that Taylor purchased a fixed level of UIM recovery that is arrived at by combining payments from all sources . . . ." *Id.* at ¶ 25.

In *Badger Mutual Insurance Co. v. Schmitz*, 2002 WI 98, 255 Wis. 2d 61, 647 N.W.2d 223, the supreme court reaffirmed the *Dowhower I* requirement that a reducing clause's effect must be "crystal clear in the context of the whole policy." *Id.* at ¶ 46. In *Dowhower v. West Bend Mutual Insurance Co.*, 2003 WI App 23, 260 Wis. 2d 192, 659 N.W.2d 57 (*Dowhower II*), this court ultimately found the policy language in that case to be ambiguous. Finally, in *Gohde v. MSI Insurance Co.*, 2003 WI App 69, 261 Wis. 2d 710, 661 N.W.2d 470, this court found the Gohdes' policies' provisions inconsistent and ambiguous, thus resulting in a finding that the reducing clauses were unenforceable.

Although the Van Erdens correctly assert that the determination of the potential ambiguity of an UIM reducing clause requires consideration of the entire policy, they fail to demonstrate how the American Family policies in question here are any different from the American Family policies approved in *Taylor*. Thus, they fail to satisfy the second part of the analysis; *i.e.*, whether the reducing clause is ambiguous in light of the entire policy, *see Badger*, 2002 WI 98 at ¶¶ 46 and 61. Therefore, we conclude, as we must, that like the reducing clauses in *Taylor*, the reducing clauses contained in the Van Erdens' policies are unambiguous within the context of the whole policy.

895

would always exhaust the higher UIM coverage limit contained in Cherie's policy.[4] Thus, they conclude that the UIM coverage purchased under Steven's policy is illusory because no benefits would ever be paid.

¶ 23. The anti-stacking provision contained in each of the Van Erdens' policies states:

> **Two or More Cars Insured**. The total limit of **our** liability under all policies issued to **you** by **us** shall not exceed the highest limit of liability under one policy.

(Emphasis in original.) This provision is unambiguous and complies with WIS. STAT. § 632.32(5)(f), which states:

> A policy may provide that regardless of the number of policies involved, vehicles involved, persons covered, claims made, vehicles or premiums shown on the policy or premiums paid the limits for any coverage under the policy may not be added to the limits for similar coverage applying to other motor vehicles to determine the limit of insurance coverage available for bodily injury or death suffered by a person in any one accident.

¶ 24. The anti-stacking provision in question also comports with the legislative policy behind WIS. STAT. § 632.32(5)(f) contained in the Legislative Memorandum 96–25 to 1995 Act 21: "Section 632.32 (5) (f), Stats., as created by the Act, permits motor vehicle insurance policies to prohibit 'stacking' of *uninsured or underinsured* motorist coverage . . . ." (Emphasis in original.) Therefore, because the anti-stacking provi-

---

[4] Cherie Van Erden's policy contained UIM limits of $250,000 per person and $500,000 per accident, while Steven's limits were $100,000 per person and $300,000 per accident.

sion contained in the Van Erdens' policies traces the language of § 632.32(5)(f), the UIM coverage under Steven's policy is not illusory. *See Gragg v. American Family Mut. Ins. Co.*, 2001 WI App 272, ¶ 11, 248 Wis. 2d 735, 637 N.W.2d 477 (stating that a policy that tracks the language of the anti-stacking statute is unambiguous, and thus, we need not inquire whether the policy is illusory).

¶ 25. Based upon the foregoing reasons, the trial court's orders are affirmed.

*By the Court.*—Orders affirmed.

¶ 26. SCHUDSON, J. (*concurring in part; dissenting in part*). I join in the majority's analysis and conclusion affirming the dismissal of the Van Erdens' action against American Family Insurance. I depart, however, from the majority's decision affirming the dismissal of their action against the City of Milwaukee.

¶ 27. The pivot point is certain. The parties agree that if the City was "[a]n insurer writing policies," *see* Wis. Stat. § 632.32(4m)(a)1, then the City was required to offer underinsured motorist coverage; if not, the City was not required to do so. Clearly, Wisconsin case law, statutes, and common sense establish that the City was acting as "[a]n insurer writing policies" and, therefore, was required to offer underinsured motorist coverage to Officer Van Erden.

¶ 28. In *Millers National Insurance Co. v. City of Milwaukee*, 184 Wis. 2d 155, 435 N.W.2d 473 (1994), the supreme court, determining whether the City of Milwaukee was required to provide uninsured motorist coverage to one of its police officers, used a sound, common sense approach: "The City may purchase third-party insurance, it may form a municipal insurance mutual . . ., it may rely upon self-insurance, or any

897

other lawful means to provide the UM insurance coverage. However, *regardless of which means the City chooses to provide insurance, the obligation is the same."* *Id.* at 166 (emphasis added). The supreme court concluded that, "[b]y electing to self insure," the City had "effectively placed itself in the insurance business" and, therefore, was "responsible for the same liabilities that would attach to third-party insurers covering that same risk." *Id.* at 167.

¶ 29. Quite reasonably, therefore, the Van Erdens argue that the City, by creating what it calls an "Uninsured Motorist Self-Insurance Plan" as its means of regulating payment of UM benefits, has become an "[i]nsurer writing policies." After all, they contend, while not denominated a "policy," the City's "Plan" carries the attributes of an insurance policy:

> The "Plan" . . . regulates how, when and to whom the City will pay damages; defines who is covered, an uninsured vehicle and motor vehicle accident; sets the City's limits of liability; regulates the effect of other insurance on the City's obligation to pay; sets forth the City's right to maintain a [WIS. STAT. § 102.29 third party liability claim]; regulates when and how disputes over payments would be arbitrated; provides the City a right of subrogation; [and] provides the applicable law, forum and severability of the "Plan's" provisions in the event of dispute.

(Citations omitted.) Thus, the Van Erdens maintain, the City should not be allowed to escape its obligation to its employees simply by mere artifice. I agree.

¶ 30. *Millers Nat'l* and common sense provide more than enough to sustain the Van Erdens' claim. But our statutes provide considerably more support. Among others, the Van Erdens invoke: (1) WIS. STAT. § 600.03(4), defining a " 'blanket insurance policy' " as "a

group policy covering unscheduled classes of persons, with the persons insured to be determined by definition of the class with or without designation of the persons covered but without any individual underwriting"; and (2) Wis. Stat. § 600.03(23), defining "[a] 'group insurance policy' " as "a policy covering a group of persons, and issued to a policyholder in behalf of the group for the benefit of group members who are selected under procedures defined in the policy or agreements collateral thereto, with or without members of their families or dependents." The City's "Plan," the Van Erdens contend, may constitute a "policy" under either or both of these provisions. Significantly, the City offers no response to their arguments based on these statutes. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments deemed admitted).

¶ 31. And perhaps most critically, Wis. Stat. § 600.03(35) defines an insurance " '[p]olicy' " as "any document other than a group certificate used to prescribe in writing the terms of an insurance contract, including endorsements and riders and service contracts issued by motor clubs." The City, however, contends that its "Plan" is not a "policy" under the statute because it was not created through offer and acceptance, and with consideration. In their *amicus curiae* brief, however, the Milwaukee Police Association (MPA) and the Milwaukee Police Supervisors Organization (MPSO) correctly counter:

> The contractual elements of offer, acceptance, and consideration are all present. The City offers the UM Plan to MPA and MPSO members because it is part of the package of benefits for City employees who drive city-owned vehicles in the course of their employment. Potential City employees accept this offer when they

899

accept employment with the City. Employees give the City consideration for the insurance contract by working for the City. Also, if the City did not provide this benefit, City employees' unions might bargain for increases in other types of compensation, such as salary. By providing these insurance benefits, consideration flows from the City to the employees.

Thus, the City's "Plan" is indeed a " 'policy' "—a "document . . . used to prescribe in writing the terms of an insurance contract." *See* WIS. STAT. § 600.03(35).

¶ 32. Failing to even mention the supreme court's decision in *Millers Nat'l*, the majority primarily relies on this court's decisions in *Classified Insurance Co. v. Budget Rent-A-Car of Wisconsin, Inc.*, 186 Wis. 2d 478, 521 N.W.2d 177 (Ct. App. 1994), and *Prophet v. Enterprise Rent-A-Car Co.*, 2000 WI App 171, 238 Wis. 2d 150, 617 N.W.2d 225. Neither case, however, offers much guidance here and, certainly, neither case controls. Evolving from significantly different circumstances, both cases addressed whether Wisconsin's statutes required that out-of-state rental car agencies, holding certificates of self-insurance, provide uninsured motorist coverage. *See. Classified*, 186 Wis. 2d at 483–84; *Prophet*, 2000 WI App 171 at ¶ 18. Here, however, we are considering a completely different issue: whether a self-insured in-state party's "Plan" constitutes a "policy" triggering its statutory obligation to offer UIM coverage to its employees.

¶ 33. As the supreme court declared: "The fact that the City is self-insured does not diminish its obligation . . . . In this context, self-insurance is considered another form of insurance . . . . [T]he City has effectively placed itself in the insurance business." *Millers Nat'l*, 184 Wis. 2d at 167. The City's "Plan" walks and squawks like a "policy" duck. Swimming in

the insurance pond, the City is "[a]n insurer writing policies." Thus, the City was required to meet its corresponding obligation to offer UIM coverage to Officer Van Erden under WIS. STAT. § 632.32(4m)(a)1. Accordingly, on this aspect of the appeal, I respectfully dissent.