Steven VAN ERDEN and Cherie Van Erden,
Plaintiffs-Appellants,†

v.

Joseph A. SOBCZAK, Defendant,

AMERICAN FAMILY MUTUAL INSURANCE COMPANY and
City of Milwaukee, Defendants-Respondents,

BADGER MUTUAL INSURANCE, Intervenor.

Court of Appeals

*No. 02–1595. Submitted on briefs January 7, 2004.—Decided
February 17, 2004.*

2004 WI App 40

(Also reported in 677 N.W.2d 718.)

† Petition to review denied 5-12-04.

On behalf of the plaintiffs-appellants, the cause was submitted on the supplemental brief of *Jonathan Cermele* and *Rachel L. Schneider* of *Eggert & Cermele, S.C.*, of Milwaukee.

On behalf of the defendant-respondent American Family Mutual Insurance Company, the cause was submitted on the supplemental brief of *James T. Murray* of *Peterson, Johnson & Murray, S.C.*, of Milwaukee.

A nonparty supplemental amicus curiae brief was filed by *Robert L. Jaskulski* of *Domnitz, Mawicke & Goisman, S.C.*, of Milwaukee, and *Charles David Schmidt* of *Cannon & Dunphy, S.C.*, of Brookfield, on behalf of the Wisconsin Academy of Trial Lawyers.

Before Fine, Schudson and Curley, JJ.

¶ 1. CURLEY, J. Steven and Cherie Van Erden appeal from the trial court's order granting summary judgment and dismissing their declaratory judgment action against the City of Milwaukee, in which the Van Erdens sought a declaration that the City had a duty to offer underinsured motorist (UIM) coverage to Steven Van Erden, as a City employee, in accordance with WIS. STAT. § 632.32(4m)(a)1 (1999–2000).[1] The Van Erdens also appeal from the trial court's order granting summary judgment and dismissing their declaratory judgment action against American Family Mutual Insurance Company (American Family), their automobile insurance carrier, in which they sought full UIM coverage under two policies, despite reducing and anti-stacking clauses in their insurance policies.[2]

¶ 2. With respect to the City, the Van Erdens contend that, as a result of its obligation to provide uninsured motorist (UM) coverage for vehicles owned by the City and operated by its employees, pursuant to WIS. STAT. § 62.67, the City should be classified as "[a]n

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

[2] Following the release of *Van Erden v. Sobczak*, 2003 WI App 57, 260 Wis. 2d 881, 659 N.W.2d 896, *vacated by* 2003 WI 129, 265 Wis. 2d 414, 668 N.W.2d 735, a petition for review was filed on behalf of the plaintiffs-appellants-petitioners, the Van Erdens. Our supreme court granted the petition for review, summarily vacated this court's decision and remanded it with instructions that we should consider our decision in light of *Folkman v. Quamme*, 2003 WI 116, 264 Wis. 2d 617, 665 N.W.2d 857. *Van Erden*, 265 Wis. 2d 414. We have done so. After the remand, we permitted additional briefs to be filed concerning the issues involving American Family. Both the Van Erdens and American Family elected to file additional briefs. Also, an amicus curiae brief was filed by the Wisconsin Association of Trial Lawyers (WATL).

169

insurer writing policies" under Wis. Stat. § 632.32(4m)(a)1, and therefore, should be required to offer UIM coverage to its employees. With regard to American Family, the Van Erdens originally argued that the reducing clauses contained in both of the separately issued policies were ambiguous.[3] The Van Erdens also claimed that the UIM policy issued to Steven was illusory because, as a result of an anti-stacking provision, they would never receive any of the UIM benefits under Steven's policy. In their most recently filed brief, they raise several additional arguments. Among them are claims that the declarations page is deficient and the policy is "complex and riddled with problems." Further, they submit that although the policy in *Taylor v. Greatway Insurance Co.*, 2001 WI 93, 245 Wis. 2d 134, 628 N.W.2d 916, appears similar and was found to be unambiguous, the holding is not on point. They also adopt the argument of Wisconsin Association of Trial Lawyers (WATL), insisting that the reducing clause violates the dictates of Wis. Stat. § 632.32(5)(i).

¶ 3. Because the City is self-insured, it is not "[a]n insurer writing policies" subject to Wis. Stat. § 632.32(4m)(a)1. Moreover, Wis. Stat. § 62.67, which specifically applies to cities that are self-insured like Milwaukee, only requires UM coverage. We assume that if the legislature had intended to require that the City offer UIM coverage to its employees, it would have expressly stated so in § 62.67, amended § 62.67 to include UIM coverage when it amended § 632.32 to include subsection (4m), or passed a new statute requiring UIM coverage for City employees. Since not one of these actions was taken, we must conclude that the

---

[3] American Family issued separate policies to Steven and Cherie.

170

City, as a self-insurer, was not required to offer UIM coverage. We cannot usurp the legislature's function.

¶ 4. As for American Family's declarations page, although it does not contain a reference to or otherwise alert the policy holder of the UIM reducing clauses, the declarations page need not list every contingency regarding the reducing clause. Furthermore, the policy need not provide a definition of the term "endorsement," or alert the policy holder to its location, in order to be enforceable. Additionally, because the reducing clauses comply with WIS. STAT. § 632.32(5)(i) and clearly set forth the limits under both policies, whether one reads them individually or in the context of the entire policy, we conclude that they are not ambiguous. Finally, because the anti-stacking clause complies with WIS. STAT. § 632.32(5)(f) and clearly sets forth the limits of coverage for injuries suffered by a person in any one accident, we conclude that the coverage is not illusory. Accordingly, the trial court's decision is affirmed.[4]

## I. BACKGROUND.

¶ 5. On November 22, 1998, Milwaukee Police Officer Steven Van Erden's squad car was struck broadside by a vehicle driven by Joseph Sobczak. Officer Van

---

[4] The Van Erdens argue that the inclusion of what they term an "unlawful exclusion," pursuant to the holding in *Blazekovic v. City of Milwaukee*, 2000 WI 41, 234 Wis. 2d 587, 610 N.W.2d 467, is a reason to not enforce the policy. We decline to address this issue as American Family has not raised as a defense the fact that Steven Van Erden was driving a non-owned emergency-type vehicle when the accident occurred. Thus, we follow the *Folkman* directive that "inconsistencies in the context of a policy must be material to the issue in dispute and be of such a nature that a reasonable insured would find an alternative meaning." *Folkman*, 264 Wis. 2d 617, ¶ 32.

171

Erden suffered serious injuries. Through Badger Mutual Insurance Company (Badger Mutual), Sobczak carried an automobile liability insurance policy with liability limits of $25,000. Badger Mutual paid the full limits of the policy to Officer Van Erden and his wife, Cherie. The Van Erdens were also paid $159,496.33 in worker's compensation coverage by the City.

¶ 6. The Van Erdens then filed a claim for UIM coverage with their own insurance carrier, American Family. Both policies contained identical reducing and anti-stacking provisions. Based on the terms of the policies, American Family paid the Van Erdens $65,503.67 — the difference between the largest amount of UIM coverage under either policy ($250,000) and the aggregate payments made by Badger Mutual on behalf of Sobczak and the City (as Officer Van Erden's worker's compensation carrier) ($184,496.33).

¶ 7. On November 16, 2001, the Van Erdens filed a declaratory judgment action against the City and American Family. All parties moved for summary judgment. The trial court granted summary judgment in favor of the City and American Family.

## II. ANALYSIS.

■■■■■

¶ 8. This appeal involves issues decided pursuant to summary judgment. We apply the same summary judgment methodology as the trial court. *Preloznik v. City of Madison*, 113 Wis. 2d 112, 115–16, 334 N.W.2d 580 (Ct. App. 1983). Thus, our review of the circuit court's decision to grant summary judgment is *de novo*. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987).

¶ 9. Summary judgment must be granted if the evidence demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. RULE 802.08(2). We must first determine whether the complaint states a claim. *Green Spring Farms*, 136 Wis. 2d at 315. If the plaintiff has stated a claim and the pleadings show the existence of factual issues, then we must examine whether the moving party has presented a defense that would defeat the claim. *Preloznik*, 113 Wis. 2d at 116. If the defendant has made a *prima facie* case for summary judgment, the court examines the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to determine whether a genuine issue exists as to any material fact, or whether reasonable conflicting inferences may be drawn from undisputed facts, therefore requiring a trial. *Green Spring Farms*, 136 Wis. 2d at 315.

*A. The City is not obligated to provide UIM coverage.*

¶ 10. We first confine our analysis within the summary judgment analysis to one issue: whether the City, which is a self-insured entity, is "[a]n insurer writing policies" under WIS. STAT. § 632.32(4m)(a)1, and, therefore, required to offer UIM coverage to its employees. Resolution of this issue involves the interpretation of both § 632.32(4m)(a)1 and WIS. STAT. § 62.67.

¶ 11. "The interpretation and application of a statute present questions of law which we review de novo." *State v. Volk*, 2002 WI App 274, ¶ 34, 258 Wis. 2d

584, 654 N.W.2d 24. Thus, our interpretation of a statute begins with the language of the statute, and if the language is plain and unambiguous, we will apply it without further inquiry into extrinsic interpretive aids, *see State v. T.J. International, Inc.*, 2001 WI 76, ¶ 20, 244 Wis. 2d 481, 628 N.W.2d 774, because "[i]f the language employed is clear and unambiguous, [it] is conclusive of legislative intent," *see Cemetery Services, Inc. v. Department of Regulation & Licensing*, 221 Wis. 2d 817, 825, 586 N.W.2d 191 (Ct. App. 1998).[5] However,

---

[5] However, some recent decisions from our supreme court involving statutory construction seem to suggest that this standard has been "relaxed," i.e., extrinsic aids have been employed without an explicit determination of ambiguity. For example, in *Village of Lannon v. Wood-Land Contractors, Inc.*, 2003 WI 150, 267 Wis. 2d 158, 672 N.W.2d 275, the supreme court indicated: "[w]hen interpreting a statute, our purpose is to discern legislative intent. To this end, we look first to the language of the statute as the best indication of legislative intent. Additionally, we may examine the statute's context and history." *Id.*, ¶ 13 (citations omitted). In a prior case, in which the supreme court did not explicitly determine the statute in question to be ambiguous, Justice Patience D. Roggensack noted in her concurrence:

> I write separately to point out that the majority opinion's statutory analysis . . . is a departure from that which has been this court's mode of statutory analysis and that it is not one that the court has discussed and decided to adopt.
>
> . . . .
>
> The majority opinion employs the analytic framework for a statute that is ambiguous, while purposely not analyzing whether [the statute] is ambiguous. This is a change in our traditional analysis . . . . I offer no opinion about whether our mode of statutory analysis ought to be changed. However, when we change the statutory analysis in a majority opinion without explaining that the majority of the court has not decided to change its analysis, we lead our readers to conclude that we have changed.

"[i]f statutory language is ambiguous, that is, 'if reasonable minds could differ as to its meaning,' we look to the scope, history, context, subject matter, and purpose of the statute to help establish its proper interpretation." *T.J.*, 244 Wis. 2d 481, ¶ 20 (citations omitted).

¶ 12. WISCONSIN STAT. § 632.32(4m)(a)1 provides:

*An insurer writing policies* that insure with respect to a motor vehicle registered or principally garaged in this state against loss resulting from liability imposed by law for bodily injury or death suffered by a person arising out of the ownership, maintenance or use of a motor vehicle *shall provide* to one insured under each such insurance policy that goes into effect after October 1, 1995, that is written by the insurer and that does not include underinsured motorist coverage written *notice of the availability of underinsured motorist coverage,* including a brief description of the coverage. An insurer is required to provide the notice required under this subdivision only one time and in conjunction with the delivery of the policy.

(Emphasis added.) WISCONSIN STAT. § 62.67 states:

A 1st class city shall provide *uninsured* motorist motor vehicle liability insurance coverage for motor vehicles owned by the city and operated by city employees in the course of employment. The coverage required by this section shall have at least the limits prescribed for uninsured motorist coverage under s. 632.32 (4) (a).

(Emphasis added.)

¶ 13. Despite the fact that WIS. STAT. § 62.67 deals exclusively with UM coverage,. the Van Erdens argue that, as a result of its obligation to provide UM liability

*Hubbard v. Messer*, 2003 WI 145, ¶¶ 44, 46, 267 Wis. 2d 92, 673 N.W.2d 676 (Roggensack, J., concurring).

coverage under § 62.67, the City should be considered "[a]n insurer writing policies" under WIS. STAT. § 632.32(4m)(a)1, and, therefore, has an obligation to offer UIM coverage to its employees. However, the argument as to whether a self-insured entity is "[a]n insurer writing policies" under § 632.32 has already been settled by this court in *Classified Insurance Co. v. Budget Rent-A-Car of Wisconsin, Inc.*, 186 Wis. 2d 478, 521 N.W.2d 177 (Ct. App. 1994). In *Classified*, an employee of Budget Rent-A-Car was driving a Budget car when she was involved in a collision with an uninsured motorist. *See id.* at 480. Budget was self-insured under WIS. STAT. § 344.16 (1989–90). *See id.* The employee's insurer sued Budget for indemnification/contribution, but the trial court granted summary judgment to Budget, concluding that Budget, as a self-insured entity, was not required to provide UM coverage for occupants of its cars:

> We conclude that § 632.32(4)(a), Stats., is inapplicable to Budget as a self-insured entity under § 344.16, Stats. We reach this conclusion based on our determination that § 632.32(4)(a) applies only to policies of insurance issued or delivered in Wisconsin. Budget is not an insurance company and has not issued a policy of insurance. *See* § 600.03(25), Stats. (defining insurance), § 600.03(27), Stats. (defining insurer), and § 600.03(35), Stats. (defining insurance policy). By merely obtaining a certificate of self-insurance pursuant to ch. 344, Budget did not transform itself into an insurance entity capable of issuing an insurance policy on behalf of the operators of its vehicles.

*Id.* at 483–84.

¶ 14. We also note that language in our recent decision of *Prophet v. Enterprise Rent-A-Car Co.*, 2000 WI App 171, 238 Wis. 2d 150, 617 N.W.2d 225, applied

the same logic to a similar situation involving UIM coverage. We concluded: *"Classified* still is persuasive authority for the proposition that, *absent a specific statutory duty, self-insurers are not required to provide [uninsured motorist] or [underinsured motorist] coverage." Prophet*, 238 Wis. 2d 150, ¶ 17 (emphasis and alterations in original) (citation omitted).

¶ 15. Thus, WIS. STAT. § 632.32(4)(a) and (4m)(a) are "inapplicable to . . . a self-insured entity." *See Classified*, 186 Wis. 2d at 483. Accordingly, we conclude that although WIS. STAT. § 62.67 requires the City to provide UM coverage to its employees, § 62.67 does not transmute the City into "[a]n insurer writing policies" under § 632.32(4m)(a)1. Rather, because the City is a self-insured entity, § 632.32(4m)(a)1 is inapplicable.

¶ 16. Moreover, if the legislature had intended to open the door wider and require the City to offer UIM coverage, it undoubtedly would have done so by either amending WIS. STAT. § 62.67 or adopting a similar statute dealing with UIM coverage. In the absence of such action on behalf of the legislature, it is clear that neither WIS. STAT. §§ 632.32(4m)(a)1 nor 62.67 require the City to offer UIM coverage to its employees.

*B. The declarations page is proper.*

¶ 17. The Van Erdens now argue that the lack of information found on the declarations page creates "an illusion of coverage which builds false expectations on the part of a reasonable insured." They submit this occurs because:

> It is precisely the seemingly straightforward nature of the declarations pages which create [sic] the illusion of coverage. [T]hey make no reference to the UIM limits

177

of $100,000/$300,000 and $250,000/$500,000 being reduced in any fashion. [T]hey fail to alert the insured to reductions for payments made by either: a) a negligent underinsured motorist[;] b) a worker's compensation carrier[;] or c) a disability carrier. [T]hey fail to either provide a definition of the term "endorsement," or explain its significance. [T]hey fail to identify the location of the UIM endorsement. [A]nd most importantly, they fail to inform the insured in any manner, let alone "adequately" as required by *Dowhower* and *Schmitz*, that the policy limits are "arrived at by combining payment made from *all* sources."

(Citations omitted.) We disagree.

¶ 18. The Van Erdens point to no case law that requires the term "endorsement" to be defined or explained or that requires the declarations page to identify the location of the UIM endorsement. In our view, the meaning of the word "endorsement" in the insurance context is well-known. Indeed, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (Merriam Webster, Inc. 1993), includes within its definition for endorsement: "a provision added to an insurance contract altering its scope or application[.]" *Id.* at 749.

■

¶ 19. While the location of an endorsement is a factor to consider in determining whether the policy is "user-friendly," location on the declarations page is not mandatory. Here, the UIM coverage limit is listed under the word "endorsement" on the declarations page. As each policy's length including the endorsement is only thirteen pages, a policy holder can easily flip through the policy and find the clearly-labeled endorsement page at the end. We also note that following the declarations pages is a helpful index entitled "Quick

Reference" that, with the exception of the endorsements, assists the reader in locating particular clauses in the policy.

¶ 20. With respect to their argument that the declarations page must alert the insured to payment reductions or inform the insured that the UIM coverage limits are arrived at by considering payments from other sources, again, no case law supports such sweeping requirements. The declarations pages do reference the upper limits of the UIM coverage, while the endorsements set forth a more detailed explanation of the UIM's limits of liability and the reductions for certain payments. As conceded by the Van Erdens, the declarations page is straightforward, although they contend it is not "informative." Yet, as observed in *Folkman v. Quamme*, 2003 WI 116, 264 Wis. 2d 617, 665 N.W.2d 857: "Courts cannot ask for an informative declarations page and then fault the insurer for failing to address every nuance and speculative interpretation of coverage that an insured might raise." *Id.*, ¶ 56. Thus, we conclude that the declarations pages build neither false hopes, nor give the illusion of coverage.

## C. The reducing clause is not ambiguous.

¶ 21. Next, we must determine whether the reducing clause contained in each of the separate policies is ambiguous. The Van Erdens claim that the clause is ambiguous because it does not clearly indicate that Steven's total UIM coverage ($250,000) would be reduced by his worker's compensation benefits ($159,496.33) and by Sobczak's liability insurance carrier payments ($25,000). The clause, contained in both policies issued to the Van Erdens, states:

The limits of this coverage will be reduced by:

179

1. A payment made or amount payable by or on behalf of any person or organization which may be legally liable, or under any collectible auto liability insurance, for loss caused by an accident with an **underinsured motor vehicle**.

2. A payment under the Liability coverage of this policy.

3. A payment made or amount payable because of **bodily injury** under any workers' compensation or disability benefits law or any similar law.

(Emphasis in original.)

¶ 22. "The construction or interpretation of an insurance policy presents a question of law to which we apply de novo review." *Badger Mut. Ins. Co. v. Schmitz*, 2002 WI 98, ¶ 50, 255 Wis. 2d 61, 647 N.W.2d 223. "We first must determine whether the insurance contract is ambiguous. Words or phrases of an insurance contract are ambiguous if they are susceptible to more than one reasonable construction. Unambiguous language in an insurance contract must not be rewritten by construction." *Id.*, ¶ 51 (citations omitted). *Folkman* instructs that, "[a]s a general rule, the language in an insurance contract is given its common, ordinary meaning, that is, what the reasonable person in the position of the insured would have understood the words to mean." 264 Wis. 2d 617, ¶ 17 (citations omitted). Stated differently, "[c]ourts will interpret the words of an insurance contract against the insured when the interpretation conforms to what a reasonable person in the position of the insured would have understood the words to mean." *Id.*, ¶ 20.

¶ 23. Also, as *Folkman* observes: "Some ambiguity is unavoidable because words are unable to anticipate every eventuality. But other ambiguity is the result of the insurer's imperfect preparation of the policy." *Id.*, ¶ 18. Of course, as we discuss later, unambiguous language may also be found ambiguous when read within the context of the entire policy.

¶ 24. With those rules in mind, we turn to the policies' reducing clauses. The Van Erdens argue that the reducing clauses violate the narrow exceptions for reducing UM and UIM coverage as set forth in Wis. Stat. § 632.32(5)(i). We are satisfied that the reducing clauses contained in both of the Van Erdens' policies comply with § 632.32(5)(i), which states:

> A policy may provide that the limits under the policy for uninsured or underinsured motorist coverage for bodily injury or death resulting from any one accident shall be reduced by any of the following that apply:
>
> 1. Amounts paid by or on behalf of any person or organization that may be legally responsible for the bodily injury or death for which the payment is made.
>
> 2. Amounts paid or payable under any worker's compensation law.
>
> 3. Amounts paid or payable under any disability benefits laws.

The reducing clause in the policies reads:

> The limits of this coverage will be reduced by:

1. A payment made or amount payable by or on behalf of any person or organization which may be legally liable, or under any collectible auto liability insurance, for loss caused by an accident with an **underinsured motor vehicle**.

2. A payment under the Liability coverage of this policy.

3. A payment made or amount payable because of **bodily injury** under any workers' compensation or disability benefits law or any similar law.

(Emphasis in original.) The Van Erdens have adopted an argument found in WATL's brief. They contend the clause is invalid because, in referencing the disability benefits, it adds to the language found in WIS. STAT. § 632.32(5)(i)3. We disagree.

¶ 25. As noted, the policies state: "A payment made or amount payable because of **bodily injury** under any workers' compensation or disability benefits law *or any similar law*." (Emphasis added.) The inclusion of the additional language does no disservice to the legislative intent. The wording merely acts as a catchall phrase for jurisdictions that may call their disability benefits law by another name. Moreover, that language is not in dispute here; Steven Van Erden received only worker's compensation benefits, not disability benefits. After reading the language of the reducing clauses, we conclude they are not ambiguous and they comply with WIS. STAT. § 632.32(5)(i).

██

¶ 26. Deciding that the language found in the reducing clause is unambiguous does not, however, end the matter. A policy clause can be unambiguous and yet become ambiguous because of the wording of other provisions in the policy. "Occasionally a clear and un-

ambiguous provision may be found ambiguous in the context of the entire policy." *Folkman*, 264 Wis. 2d 617, ¶ 19.

■■■■

¶ 27. In determining whether a policy contains any contextual ambiguity, courts are cautioned to read the policy as a whole: "There is a complementary principle to contextual ambiguity. Sometimes it is necessary to look beyond a single clause or sentence to capture the essence of an insurance agreement." *Id.*, ¶ 21. Furthermore, "[t]he language of a policy should not be made ambiguous by isolating a small part from the context of the whole." *Id.*

■■■

¶ 28. The Van Erdens state that *Taylor* should not be considered in deciding whether there are any contextual ambiguities in the policies' UIM clauses because, while favorably construing an American Family automobile policy, the *Taylor* court did not find the automobile in question to be an underinsured automobile, and thus, the court never discussed the policy's reducing coverage language. Further, the Van Erdens also submit that there is no way of knowing whether the policies in *Taylor* are identical to those found here.[6] While we assume the policies are different, we conclude that *Taylor* provides us with the tools to analyze the policy language.

---

[6] Indeed, we suspect the Van Erdens' policies are identical to the one approved in *Taylor v. Greatway Ins. Co.*, 2001 WI 93, ¶ 25, 245 Wis. 2d 134, 628 N.W.2d 916, as both cases deal with a standard American Family automobile insurance policy. Nevertheless, we will assume they are different for analysis purposes.

¶ 29. In *Taylor*, the supreme court surveyed several major cases touching on UIM insurance coverage. The opinion went beyond simply noting that the auto involved in the controversy was not an underinsured auto:

> We conclude that the language in each of American Family's policies at issue satisfies the requirements of *Dowhower.* Each policy clearly sets forth that Taylor purchased a fixed level of UIM recovery that is arrived at by combining payments from all sources, including payments from Hermanson's liability coverage . . . .

*Taylor*, 245 Wis. 2d 134, ¶ 25. Thus, in dicta, *Taylor* determined both that the UIM clause was unambiguous and that there was no contextual ambiguity in the policy. *Taylor* also provides a helpful blueprint for deciding whether any contextual ambiguity exists in the policy.

> The first page of each policy, the declarations page, lists the coverage limits of the policy, including the $50,000 limit for UIM coverage. The first page of each policy also includes an instruction to "please read your policy" that is located on the top of the page in bold letters. Page 3 of each policy includes an instruction for the insured to read the policy carefully. Pages 11 and 12 constitute the underinsured motorist coverage endorsement of both policies. The underinsured motorist endorsement of each policy instructs the insured to keep the endorsement with the rest of the policy. This instruction is on the top of the first page of the endorsement in bold letters. The definition for underinsured vehicle is located in both policies on page 1 of the endorsement. The reducing clause for UIM coverage is located in both policies on page 2 of the endorsement. When we read the whole policy carefully, as noted on the first and third pages, we find that the policy clearly sets forth that Taylor purchased a fixed level of

184

> UIM recovery that is arrived at by combining payments from all sources, including payments from Hermanson's liability coverage.

*Id.* (footnote omitted). We have applied a similar analysis to the Van Erdens' policies and found all the safeguards mentioned in *Taylor* to be present.

¶ 30. Additionally, as directed by *Folkman*:

> The test for determining whether contextual ambiguity exists is the same as the test for ambiguity in any disputed term of a policy. That is, are words or phrases of an insurance contract, when read in the context of the policy's other language, reasonably or fairly susceptible to more than one construction? The standard for determining a reasonable and fair construction is measured by the objective understanding of an ordinary insured.

264 Wis. 2d 617, ¶ 29. Following *Folkman*'s directive, after considering the entire policy, we conclude there is only one objectively reasonable construction. Consequently, we conclude that no contextual ambiguity exists. Thus, our reading of the Van Erdens' policies satisfies us that there is no ambiguity in the wording of the limit of liability provisions or any ambiguity when these provisions are read in conjunction with the entire policy.

¶ 31. Furthermore, the American Family reducing clause complies with the public policy of the legislature expressed in Wis. Stat. § 632.32(5)(i). *See State v. Martin*, 162 Wis. 2d 883, 897 n.5, 470 N.W.2d 900 (1991) ("While legislative history cannot be used to demonstrate that a statute unambiguous on its face is ambiguous, there is no converse rule that statutory history cannot be used to reinforce and demonstrate that a statute plain on its face, when viewed historically, is

indeed unambiguous."). Legislative Memorandum 96–25 to 1995 Act 21, which amended § 632.32 to add subsections (4m) and (5)(f) through (5)(j), states that § 632.32(5)(i):

> permits motor vehicle insurance policies to reduce the limit that is payable for uninsured or underinsured motorist coverage for bodily injury or death by payments received from other sources, such as the amounts paid by a person who is legally responsible for the bodily injury or death . . . [or] the amounts paid or payable under the worker's compensation law.

¶ 32. The Van Erdens' policies clearly set forth that their UIM coverage would be fixed at a level of recovery that would be arrived at by combining payments made from the listed sources. Thus, under the declared public policy of the legislature, and given our conclusion that the reducing clause is unambiguous in the context of the whole policy, our inquiry is at an end.

*D. The UIM coverage is not illusory.*

¶ 33. Finally, the Van Erdens claim that their UIM coverage is illusory. They allege that they would never be able to use the UIM coverage under Steven's policy while both policies were in effect because, under the anti-stacking provision contained in each policy, they would always exhaust the higher UIM coverage limit contained in Cherie's policy.[7] Thus, they conclude that the UIM coverage purchased under Steven's policy is illusory because no benefits would ever be paid.

---

[7] Cherie Van Erden's policy contained UIM limits of $250,000 per person and $500,000 per accident, while Steven's limits were $100,000 per person and $300,000 per accident.

¶ 34. The anti-stacking provision contained in each of the Van Erdens' policies states:

> **Two or More Cars Insured**. The total limit of **our** liability under all policies issued to **you** by **us** shall not exceed the highest limit of liability under one policy.

(Emphasis in original.) This provision is unambiguous and complies with Wis. Stat. § 632.32(5)(f), which states:

> A policy may provide that regardless of the number of policies involved, vehicles involved, persons covered, claims made, vehicles or premiums shown on the policy or premiums paid the limits for any coverage under the policy may not be added to the limits for similar coverage applying to other motor vehicles to determine the limit of insurance coverage available for bodily injury or death suffered by a person in any one accident.

¶ 35. As American Family's original brief explains, circumstances do exist which would permit Steven Van Erden to utilize his $100,000 limit. The reasoning expressed is sound. If Steven Van Erden were driving his own car and was struck by a driver with lesser insurance limits, he could only avail himself of his policy's UIM coverage, as he would not be entitled to his wife's higher limits due to an exclusion in her policy, which reads: "While **occupying**, when struck by, a motor vehicle that is not insured under this policy, if it is owned by **you** or any resident of **your** household." Thus, the UIM insurance Steven Van Erden carried was not illusory.

¶ 36. Moreover, the anti-stacking provision in question also comports with the legislative policy behind Wis. Stat. § 632.32(5)(f) contained in the Legisla-

187

tive Memorandum 96–25 to 1995 Act 21: "Section 632.32 (5) (f), Stats., as created by the Act, permits motor vehicle insurance policies to prohibit 'stacking' of *uninsured or underinsured* motorist coverage . . . ." (Emphasis in original.) Therefore, we note that the anti-stacking provision contained in the Van Erdens' policies traces the language of § 632.32(5)(f).

¶ 37. Finally, we observe that the policy language found here is also altogether different than that found in *Schmitz*, in which the court deemed the American Merchant's policy "a maze that is organizationally complex and plainly contradictory." 255 Wis. 2d 61, ¶ 72. The effect of the reducing clause was made clear in the endorsement. The policy made reference to UIM coverage in the declarations page. Further, the endorsement contained no disingenuous or confusing language. Here, there is no contextual ambiguity as there are no inconsistent provisions, provisions that build false expectations, or provisions that produce reasonable alternative meanings. Therefore, we conclude the UIM policy coverage was neither ambiguous nor illusory.

¶ 38. Based upon the foregoing reasons, the trial court's orders are affirmed.

*By the Court.*—Orders affirmed.

¶ 39. SCHUDSON, J. (*concurring in part; dissenting in part*). I join in the Majority's analysis and conclusion affirming the dismissal of the Van Erdens' action against American Family. I depart, however, from the Majority's decision affirming the dismissal of their action against the City of Milwaukee.

¶ 40. The pivot point is certain. The parties agree that if the City was "[a]n insurer writing policies," *see* Wis. Stat. § 632.32(4m)(a)1, then the City was required to offer underinsured motorist coverage; if not, the City

188

was not required to do so. Clearly, Wisconsin case law, statutes, and common sense establish that the City was acting as "[a]n insurer writing policies" and, therefore, was required to offer underinsured motorist coverage to Officer Van Erden.

¶ 41. In *Millers National Insurance Co. v. City of Milwaukee*, 184 Wis. 2d 155, 516 N.W.2d 376 (1994), the supreme court, determining whether the City of Milwaukee was required to provide uninsured motorist coverage to one of its police officers, used a sound, common sense approach: "The City may purchase third-party insurance, it may form a municipal insurance mutual . . ., it may rely upon self-insurance, or any other lawful means to provide the UM insurance coverage. However, *regardless of which means the City chooses to provide insurance, the obligation is the same.*" *Id.* at 166 (emphasis added). The supreme court concluded that, "[b]y electing to self-insure," the City had "effectively placed itself in the insurance business" and, therefore, was "responsible for the same liabilities that would attach to third-party insurers covering that same risk." *Id.* at 167.

¶ 42. Quite reasonably, therefore, the Van Erdens argue that the City, by creating what it calls an "Uninsured Motorist Self-Insurance Plan" as its means of regulating payment of UM benefits, has become an "[i]nsurer writing policies." After all, they contend, while not denominated a "policy," the City's "Plan" carries the attributes of an insurance policy:

> The "Plan" . . . regulates how, when and to whom the City will pay damages; defines who is covered, an uninsured vehicle and motor vehicle accident; sets the City's limits of liability; regulates the effect of other insurance on the City's obligation to pay; sets forth the City's right to maintain a [Wis. Stat. § 102.29 third

189

> party liability claim]; regulates when and how disputes over payments would be arbitrated; provides the City a right of subrogation; [and] provides the applicable law, forum and severability of the "Plan's" provisions in the event of dispute.

(Citations omitted.) Thus, the Van Erdens maintain, the City should not be allowed to escape its obligation to its employees simply by mere artifice. I agree.

¶ 43. *Millers National* and common sense provide more than enough to sustain the Van Erdens' claim. But our statutes provide considerably more support. Among others, the Van Erdens invoke: (1) Wis. Stat. § 600.03(4), defining a " 'blanket insurance policy' " as "a group policy covering unscheduled classes of persons, with the persons insured to be determined by definition of the class with or without designation of the persons covered but without any individual underwriting"; and (2) Wis. Stat. § 600.03(23), defining "[a] 'group insurance policy' " as "a policy covering a group of persons, and issued to a policyholder in behalf of the group for the benefit of group members who are selected under procedures defined in the policy or agreements collateral thereto, with or without members of their families or dependents." The City's "Plan," the Van Erdens contend, may constitute a "policy" under either or both of these provisions. Significantly, the City offers no response to their arguments based on these statutes. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments deemed admitted).

¶ 44. And perhaps most critically, Wis. Stat. § 600.03(35) defines an insurance " '[p]olicy' " as "any document other than a group certificate used to prescribe in writing the terms of an insurance contract, including endorsements and riders and service con-

190

tracts issued by motor clubs." The City, however, contends that its "Plan" is not a "policy" under the statute because it was not created through offer and acceptance, and with consideration. In their *amicus curiae* brief, however, the Milwaukee Police Association (MPA) and the Milwaukee Police Supervisors Organization (MPSO) correctly counter:

> The contractual elements of offer, acceptance, and consideration are all present. The City offers the UM Plan to MPA and MPSO members because it is part of the package of benefits for City employees who drive city-owned vehicles in the course of their employment. Potential City employees accept this offer when they accept employment with the City. Employees give the City consideration for the insurance contract by working for the City. Also, if the City did not provide this benefit, City employees' unions might bargain for increases in other types of compensation, such as salary. By providing these insurance benefits, consideration flows from the City to the employees.

Thus, the City's "Plan" is indeed a " 'policy' "—a "document . . . used to prescribe in writing the terms of an insurance contract." *See* WIS. STAT. § 600.03(35).

¶ 45. Failing to even mention the supreme court's decision in *Millers National*, the Majority primarily relies on this court's decisions in *Classified Insurance Co. v. Budget Rent-A-Car of Wisconsin, Inc.*, 186 Wis. 2d 478, 521 N.W.2d 177 (Ct. App. 1994), and *Prophet v. Enterprise Rent-A-Car Co.*, 2000 WI App 171, 238 Wis. 2d 150, 617 N.W.2d 225. Neither case, however, offers much guidance here and, certainly, neither case controls. Evolving from significantly different circumstances, both cases addressed whether Wisconsin's statutes required that out-of-state rental car agencies, holding certificates of self-insurance, provide uninsured

motorist coverage. *See Classified*, 186 Wis. 2d at 483–84; *Prophet*, 238 Wis. 2d 150, ¶ 18. Here, however, we are considering a completely different issue: whether a self-insured in-state party's "Plan" constitutes a "policy" triggering its statutory obligation to offer UIM coverage to its employees.

¶ 46. As the supreme court declared: "The fact that the City is self-insured does not diminish its obligation . . . . In this context, self-insurance is considered another form of insurance . . . . [T]he City has effectively placed itself in the insurance business." *Millers National*, 184 Wis. 2d at 166–67. The City's "Plan" walks and squawks like a "policy" duck. Swimming in the insurance pond, the City is "[a]n insurer writing policies." Thus, the City was required to meet its corresponding obligation to offer UIM coverage to Officer Van Erden under Wis. Stat. § 632.32 (4m)(a)1. Accordingly, on this aspect of the appeal, I respectfully dissent.