William J. Myers, Plaintiff-Appellant,†

v.

General Casualty Company of Wisconsin,
Defendant-Respondent.

Court of Appeals

*No. 04–0827. Submitted on briefs December 15, 2004.—Decided
February 2, 2005.*

2005 WI App 49

(Also reported in 694 N.W.2d 723.)

† Petition to review denied 6-1-2005.

On behalf of the plaintiff-appellant, the cause was submitted on the brief of *Michael J. Jassak* and *Benjamin S. Wagner*, of *Habush, Habush & Rottier, S.C.* of Racine.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Philip C. Reid* and *Lauri A. Schumacher* of *Cook & Franke, S.C.* of Milwaukee.

Before Anderson, P.J., Brown and Nettesheim, JJ.

¶ 1. NETTESHEIM, J. William J. Myers appeals from a declaratory judgment granted in favor of his motor vehicle insurer, General Casualty Company of Wisconsin. Myers argues that the trial court incorrectly determined that an uninsured motorist (UM) reducing clause in the General Casualty policy is valid and not contextually ambiguous. We uphold the trial court's rulings and consequently affirm the judgment.

## BACKGROUND

¶ 2. The parties do not dispute the facts. On July 25, 1997, Myers was operating a motor vehicle in the course of his employment when he was struck by a

vehicle driven by an uninsured motorist. It is undisputed that the uninsured motorist's negligence was the cause of the accident. As a result of the accident, Myers sustained severe and permanent injuries. At the time of the accident, Myers had worker's compensation insurance through his employer.[1] Myers received in excess of $213,000 in worker's compensation benefits as a result of his injuries.

¶ 3. At the time of the accident, Myers also had UM coverage of $100,000 per person under a motor vehicle insurance policy issued to him by General Casualty. The UM coverage included a reducing clause for worker's compensation payments. Myers made a claim for his damages against General Casualty under the UM provision. Relying on the reducing clause, General Casualty denied the claim.

¶ 4. Myers responded with the instant action against General Casualty alleging that the reducing clause was invalid under WIS. STAT. § 632.32(5)(i) (2003–04)[2] and the supreme court's decision in *Badger Mutual Insurance Co. v. Schmitz*, 2002 WI 98, 255 Wis. 2d 61, 647 N.W.2d 223. Alternatively, Myers alleged that the reducing clause, when considered in conjunction with other provisions in the policy, created an ambiguity and was, therefore, unenforceable.

---

[1] Myers' employer additionally provided him with a motor vehicle insurance policy issued by Cities and Villages Mutual Insurance Company. Myers named Cities and Villages in this action before the circuit court. Like General Casualty, Cities and Villages obtained a judgment that its UM provisions were valid and enforceable. Myers does not appeal the judgment as it pertains to Cities and Villages.

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

¶ 5. General Casualty's answer alleged an affirmative defense under the UM reducing clause. Later, General Casualty moved for declaratory judgment on the basis of the reducing clause. Following briefing by the parties, the trial court granted General Casualty's motion. The court held that the reducing clause was valid and that the clause was not contextually ambiguous. Myers appeals from the ensuing judgment dismissing his complaint.

## DISCUSSION

### *Standard of Review*

¶ 6. The grant or denial of a declaratory judgment is addressed to the trial court's discretion. *Commercial Union Midwest Ins. Co. v. Vorbeck*, 2004 WI App 11, ¶ 7, 269 Wis. 2d 204, 674 N.W.2d 665, *review denied*, 2004 WI 20, 269 Wis. 2d 200, 675 N.W.2d 806 (Wis. Feb. 24, 2004) (No. 03–0100). However, when the exercise of such discretion turns upon a question of law, we review the question de novo, benefiting from the trial court's analysis. *Id*. Here, all of the issues raised by Myers turn upon our construction of the General Casualty insurance policy, an exercise that presents a question of law. *See id*.

### *The General Casualty Policy*

¶ 7. General Casualty first issued its motor vehicle insurance policy to Myers in 1985. The policy included uninsured motorist coverage and an accompanying reducing clause for worker's compensation payments. At that time, UM reducing clauses were valid. However, in 1987, the supreme court held that such clauses were not authorized by WIS. STAT. § 632.32(4)(a)

(1979–80), which required an insurer to include UM coverage in a motor vehicle liability policy. *Nicholson v. Home Ins. Cos.*, 137 Wis. 2d 581, 594, 405 N.W.2d 327 (1987). As a result, the reducing clause in Myers' original policy and in subsequent renewal policies was of no legal effect. Later, in 1995, the Wisconsin legislature responded to *Nicholson* with the enactment of Wis. Stat. § 632.32(5)(i) (1995–96) which permits insurers to include reducing clauses for certain types of payments as part of their UM coverage. *See* 1995 Wis. Act 21.

¶ 8. That brings us to the General Casualty policy which is at issue in this case. In 1997, after the enactment of Wis. Stat. § 632.32(5)(i), General Casualty issued its renewal policy to Myers. The policy consisted of a nineteen-page primary policy, a nine-page "Amendment of Policy Provisions—Wisconsin," and a five-page "Underinsured Motorist Coverage—Wisconsin." The primary policy replicated the original policy, including the original UM reducing clause. In addition, as a result of the legislature's enactment of § 632.32(5)(i), the "Amendment" section of the policy recited a further reducing clause. Therefore, the General Casualty policy at issue includes two UM reducing clauses.

¶ 9. The reducing clause in the primary policy reads in relevant part:

**LIMIT OF LIABILITY**

. . . .

Any amounts otherwise payable for damages under this coverage shall be reduced by:

1. all sums paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under the Liability Coverage of this policy, and

438

2. all sums paid or payable because of the bodily injury under any workers' or workmen's compensation, disability benefits law or any similar law.

Any payment under this coverage to or for an "insured" will reduce any amount that person is entitled to recover for the same damages under the Liability Coverage of this policy.

¶ 10. The language of the reducing clause in the amendment is substantially similar to that in the primary policy. It reads as follows:

III. UNINSURED MOTORIST COVERAGE

. . . .

**LIMIT OF LIABILITY**

. . . .

C. The limit of liability shall be reduced by all sums:

1. Paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A; and

2. Paid or payable because of the "bodily injury" under any of the following or similar law:

a. Workers' compensation law; or

b. Disability benefits law.

D. No one will be entitled to receive duplicate payments for the same elements of loss.

### *Myers' Challenges*

#### *1. Compliance with* Wis. Stat. *§ 632.32*

¶ 11. Myers argues that the reducing clauses in both the primary policy and the amendment are unenforceable because they do not comply with Wis. Stat.

439

§ 632.32(5)(i), which governs motor vehicle insurance policies issued or delivered in Wisconsin.[3] It provides:

> (i) A policy may provide that the limits under the policy for uninsured or underinsured motorist coverage for bodily injury or death resulting from any one accident shall be reduced by any of the following that apply:
>
> 1. Amounts paid by or on behalf of any person or organization that may be legally responsible for the bodily injury or death for which the payment is made.
>
> 2. Amounts paid or payable under any worker's compensation law.
>
> 3. Amounts paid or payable under any disability benefits laws.

Sec. 632.32(5)(i).

¶ 12. Myers first argues that the reducing clauses fail to comply with Wɪs. Sᴛᴀᴛ. § 632.32(5)(i) because they reduce UM coverage by payments made "because" of the bodily injury rather than "for" the bodily injury as set forth in § 632.32(5)(i). The essence of this argument is that the language of a reducing clause must mirror that of § 632.32(5)(i). We disagree. There is no "magic language" required by § 632.32(5)(i) and a reducing clause does not have to mirror the language of the statute. *Hanson v. Prudential Prop. & Cas. Ins. Co.*, 224 Wis. 2d 356, 370, 591 N.W.2d 619 (Ct. App. 1999). Moreover, General Casualty is not attempting to reduce Myers' payments under this language of the reducing

---

[3] General Casualty first argues that Myers' arguments are waived because he did not raise them before the circuit court. Assuming this is so, we nonetheless choose to address them on the merits.

clauses. Rather, it is relying on the worker's compensation language of the reducing clauses. "The fact that an insurance policy may include arguably ambiguous language upon which the insurer has not relied is of no consequence and will not defeat the right of an insurer to reduce its limits of liability under a valid provision." *Remiszewski v. American Family Ins. Co.*, 2004 WI App 175, ¶ 17, 276 Wis. 2d 167, 687 N.W.2d 809, *review denied,* 2004 WI 138, 276 Wis. 2d 30, 689 N.W.2d 57 (Wis. Oct. 19, 2004) (No. 03–2653).

¶ 13. Next, Myers argues that the use of the phrase "or any similar law" following the reference to worker's compensation benefits is an invalid attempt to reduce payments from sources not permitted under Wis. Stat. § 632.32(5)(i). We also reject this argument. In *Van Erden v. Sobczak*, 2004 WI App 40, ¶ 25, 271 Wis. 2d 163, 677 N.W.2d 718, *review denied,* 2004 WI 114, 273 Wis. 2d 655, 684 N.W.2d 136 (Wis. May 12, 2004) (No. 02–1595), the court considered a reducing clause that contained similar language: "The limits of this coverage will be reduced by: . . . . 3. A payment made or amount payable because of **bodily injury** under any workers' compensation or disability benefits law *or any similar law.*" *Van Erden,* 271 Wis. 2d 163, ¶ 24 (emphasis added). The *Van Erden* court held that the inclusion of the "similar law" language "does no disservice to the legislative intent. The wording merely acts as a catchall phrase for jurisdictions that may call their disability benefits law by another name." *Id.,* ¶ 25.

¶ 14. While Myers acknowledges *Van Erden's* holding, he contends that the *Van Erden* court failed to fully consider that the inclusion of the "similar law" language failed to inform the insured of the amount of underinsured motorist (UIM) coverage actually purchased. Even assuming this criticism is valid, we are

duty bound to follow *Van Erden*. *Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997).

██

¶ 15. We uphold the trial court's ruling that the General Casualty reducing clauses comply with Wis. Stat. § 632.32(5)(i).

### 2. Contextual Ambiguity

¶ 16. Myers next argues that even if the reducing clauses comply with Wis. Stat. § 632.32(5)(i), they are not enforceable because they are contextually ambiguous when read in conjunction with other provisions of the policy. In answering this criticism, we limit our discussion to the reducing clause recited in the primary policy since, as our analysis will reveal, this clause is not contextually ambiguous because the Index Of Coverage correctly refers the insured to the section of the policy where the clause is located and the clause itself clearly notifies the insured that UM coverage will be reduced by any worker's compensation payments. Therefore, assuming for the sake of argument that the reducing clause in the Amendment is contextually ambiguous, such assumed ambiguity is of no consequence.[4]

¶ 17. To date, the published case law concerning contextual ambiguity has been limited to *under*insured motorist provisions. *See, e.g., Folkman v. Quamme*, 2003 WI 116, 264 Wis. 2d 617, 665 N.W.2d 857; *Vorbeck*, 269 Wis. 2d 204; *Van Erden*, 271 Wis. 2d 163; *Dowhower v. Marquez*, 2004 WI App 3, 268 Wis. 2d 823, 674 N.W.2d

---

[4] Myers does not contend that the existence of two reducing clauses in a single policy produces any contextual ambiguity. Nor does he cite to any interplay between the two clauses that augurs for contextual ambiguity. Rather, he registers separate contextual ambiguity challenges to each.

906 (*Dowhower III*), *review denied,* 2004 WI 20, 269 Wis. 2d 198, 675 N.W.2d 804 (Wis. Feb. 24, 2004) (No. 01–1347). Thus, General Casualty correctly observes that "[i]t is an open question whether the methodology used to analyze UIM reducing clauses applies to UM reducing clauses because there is a significant difference between the two types of coverage."

¶ 18. While we acknowledge the differences between UIM and UM coverage,[5] we see no reason why the principles governing contextual ambiguity in a UIM reducing clause setting should not also apply in a UM reducing clause setting. If the goal in a UIM case is to assure that a reasonable insured is not given false signals or expectations, *see Dowhower III,* 268 Wis. 2d 823, ¶ 18, that surely must also be the goal in a UM case. We therefore will examine General Casualty's reducing clause using the principles set forth in the UIM cases.

¶ 19. The standard for addressing alleged contextual ambiguity in the UIM setting is whether the "organization, labeling, explanation, inconsistency, omission, and text of other provisions in the policy" create "an objectively reasonable alternative meaning and, thereby, disrupt an insurer's otherwise clear policy

_____

[5] "[T]he concept of uninsured motorist and underinsured motorist coverage is to provide protection in diametrically opposite circumstances. Uninsured motorist coverage is effective where the tortfeasor has no liability insurance and underinsured motorist coverage is effective where there is a tortfeasor with liability coverage but inadequate in amount for the injuries caused." *Schwochert v. American Family Mut. Ins. Co.,* 139 Wis. 2d 335, 346, 407 N.W.2d 525 (1987), *aff'd,* 172 Wis. 2d 628, 494 N.W.2d 201 (1993).

language." *Id.*, ¶ 19 (citing *Folkman*, 264 Wis. 2d 617, ¶¶ 19, 30). "[C]ontextual ambiguity in an insurance policy must be genuine and apparent on the face of the policy, if it is to upset the intentions of an insurer embodied in otherwise clear language." *Folkman*, 264 Wis. 2d 617, ¶ 29. A policy will not be enforced when it is so ambiguous or obscure as to create false expectations. *See id.*, ¶¶ 20, 31. To assess contextual ambiguity, "the court should trace the route the insured would have to take from the declarations page to the reducing clause." *Dowhower III*, 268 Wis. 2d 823, ¶ 19.

¶ 20. With these principles in mind, we examine the provisions of General Casualty's primary policy. Beginning with the title page, we observe that it advises the insured that "[t]he policy itself sets forth, in detail, the rights and obligations of both you and your insurance company. **It is important that you read your policy carefully.**" While directives to read a policy carefully will not resolve the question of contextual ambiguity, they can serve as markers that assist a reasonable insured in navigating through a policy. *Vorbeck*, 269 Wis. 2d 204, ¶¶ 23–24.

¶ 21. The title page is immediately followed by a one-page document entitled, "Your Personal Auto Policy Quick Reference." This page includes an "Index of Coverage" which lists the various sections of the primary policy. These sections are "Part A—Liability," "Part B—Medical Payments Coverage," "Part C—Uninsured Motorist Coverage," "Part D—Coverage for Damage to Your Auto," "Part E—Duties After an Accident of Loss," and "Part F—General Provision." Opposite each of these sections listings is a reference to the page of the policy where the particular section is addressed. In addition, the index lists subsections un-

der the sections headings. The portion of the index relating to UM coverage reads:

Part C—Uninsured Motorist Coverage 8

-Insuring Agreement -Other Insurance
-Exclusions -Arbitration
-Limit of Liability

¶ 22. As the "Index Of Coverage" promises, the section entitled "**Part C-UNINSURED MOTORIST COVERAGE**" commences at page eight. This section then addresses the various subsections in the order they are listed in the index. Following the "Insuring Agreement" and "Exclusions" subsections, the insured would next find the "**LIMIT OF LIABILITY**" subsection on page nine. This subsection includes the reducing clause at issue. Thus, the index correctly refers the insured to the reducing clause in the primary policy in an orderly, direct and understandable fashion.

¶ 23. Myers cites to *Dowhower III* in support of his contention that the UM reducing clause is contextually ambiguous because General Casualty's declarations page, which follows the Quick Reference page, does not indicate any possibility of a reduction in the limit of liability for UM coverage of $100,000 per person. *See Dowhower III*, 268 Wis. 2d 823, ¶ 20 (observing that the declarations page in no way assists the insured in understanding that the limits of liability are subject to conditions and exceptions set forth later in the policy). However, the declarations page in *Dowhower* additionally misleads the insured as to the location of UIM coverage information by listing the UIM limits of liability under the UM coverage heading. *Id.*, ¶ 20. Here, in contrast, the "Index of Coverage"

445

which immediately precedes the declarations page, straightforwardly directs the insured to the UM coverage provisions where the limits of liability clearly set out the reducing clause.

¶ 24. Myers additionally points to the failure of the Quick Reference page to reference a UM reducing clause; however, there is no requirement that it do so. *See Vorbeck,* 269 Wis. 2d 204, ¶ 32. Unlike the policy in *Dowhower III* which failed to address UIM coverage in its index, the above analysis demonstrates that the Quick Reference includes an Index Of Coverage which references the UM provisions of the policy and the various subsections bearing on that coverage, including a limit of liability which recites the reducing clause. We hold that when an insurance policy correctly refers an insured to a relevant provision of an insurance policy without confusion, misdirection or false signals, the insured is properly charged with the obligation to read the provision.

¶ 25. Finally, Myers complains that the Quick Reference and Index Of Coverage refers to the original and once prohibited reducing clause in the primary policy. He argues that the insertion of this "illicit reduction language compounds the confusion and ambiguity of General Casualty's UM policy." We disagree. The reducing clause in the primary policy, while once prohibited, was enforceable at the time General Casualty reissued Myers' policy in 1997. Rather than confusing the insured, our analysis of the primary policy demonstrates that the reducing clause in the primary policy is easily located and clearly notifies the insured that UM coverage will be reduced by all amounts paid or payable by worker's compensation.

¶ 26. In summary, we conclude that there is nothing in General Casualty's primary policy which would befuddle a reasonable insured in his or her attempt to locate and understand the limits of the policy's UM coverage, including the reducing effect of any past or future worker's compensation payments. *See Vorbeck*, 269 Wis. 2d 204, ¶ 30. In tracing the route that a reasonable insured would have had to take to arrive at General Casualty's UM reducing clause, we encounter no inconsistent or misleading provisions which might produce an objectively reasonable alternative meaning of the policy. *See id.* We conclude that the UM reducing clause in General Casualty's policy is not contextually ambiguous and is therefore enforceable.[6]

## Conclusion

¶ 27. The UM reducing clauses in the General Casualty policy do not violate the provisions of Wis. Stat. § 632.32(5)(i). Nor is the reducing clause in the primary policy contextually ambiguous. We uphold the trial court's judgment in favor of General Casualty.

*By the Court.*—Judgment affirmed.

■■■■■■

[6] Myers additionally argues that the language forbidding "duplicate payments for the same elements of loss" in Section D of the Limit of Liability provisions in the Amendment is ambiguous. However, General Casualty did not rely on this provision when denying Myers' claim for UM benefits. As we have noted, "The fact than an insurance policy may include arguably ambiguous language upon which the insurer has not relied is of no consequence and will not defeat the right of an insurer to reduce its limits of liability under a valid provision." *Remiszewski v. American Family Ins. Co.*, 2004 WI App 175, 276 Wis. 2d 167, ¶ 17, 687 N.W.2d 809, *review denied,* 2004 WI 138, 276 Wis. 2d 30, 689 N.W.2d 57 (Wis. Oct. 19, 2004) (No. 03–2653).